

NORTHERN DISTRICT OF TEXAS

FILED

APR 2 9 2014

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| JIMMY EWING, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-85-A |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISIONER OF | § | |
| SOCIAL SECURITY ADMINSTRATION, | § | |
|     DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Jimmy Ewing ("Ewing") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA"). In May 2011, Ewing protectively applied for DIB and SSI, alleging that his disability began on May 11, 2011. (Transcript ("Tr.") 10, 112-29.) His applications were denied initially and on reconsideration, and Ewing requested a hearing before an administrative law judge ("ALJ"). (Tr. 10; *see* Tr. 57-66, 75-76.) The ALJ held a hearing on May 24, 2012. (Tr. 10; *see* Tr. 24-52.) Thereafter, on September 4, 2012, the

20

ALJ issued a decision that Ewing was not disabled. (Tr. 10-20.) On December 7, 2012, the Appeals Council denied Ewing's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-4.)

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt.

P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

### III.   ISSUES

In his brief, Ewing presents the following issues to the Court:

A. Whether the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence and consistent with Social Security Ruling 96-8p[1] (Pl's Br. at 1, 8-12); and

B. Whether the ALJ erred at Step Five in relying on the vocational expert's testimony to find that Ewing retained the ability to perform other work that existed in significant numbers in the national economy (Pl.'s Br. at 12-15).

### IV.   ADMINISTRATIVE RECORD AND ALJ DECISION

The ALJ, in his September 4, 2012 decision, stated that Ewing had not engaged in any substantial gainful activity since May 11, 2011, the alleged onset date for his disability. (Tr. 15.) The ALJ further found that Ewing had the severe impairment of bilateral heel fractures. (Tr. 12.) The ALJ also held that none of Ewing's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 13.)   As to Ewing's RFC determination, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except he is limited to standing and walking 2 hours and has to frequently alternate sitting and standing.  He cannot climb ladders, ropes, or scaffolds.

(Tr. 13.) The ALJ opined, based on his RFC assessment and the testimony of a vocational expert ("VE"), that Ewing was not able to perform his past relevant work. (Tr. 18.)  However, based also on the testimony of the VE, the ALJ determined that there were jobs in significant numbers in the national economy that Ewing could perform. (Tr. 18-19.)  Consequently, the ALJ found that Ewing was not disabled. (*Id.*)

---

[1] The Court notes that in the "Issues Presented" section of his brief, Ewing also claims that the ALJ's RFC determination was inconsistent with SSR 96-2p. However, the Court will not analyze SSR 96-2p because Ewing, in both his initial brief and reply brief, makes no further mention of SSR 96-2p.

4

# V.   DISCUSSION

## A.   RFC Determination

In his brief, Ewing argues that the ALJ's RFC determination is not supported by substantial evidence and is inconsistent with SSR 96-8p, which deals with assessing RFC in initial claims. (Pl.'s Br. at 8-12.) Specifically, Ewing claims that "the ALJ's RFC finding is not supported by the substantial evidence of record and is in direct conflict with the only two RFC assessments of record—that of Dr. Ligon, the State agency non-examining physician, and Dr. Clyde, Plaintiff's treating physician." (Pl.'s Br. at 8.) Ewing argues that "in coming to his ultimate RFC determination, the ALJ relied on no medical opinion of record and, instead, has improperly come up with his own RFC finding, which the Fifth Circuit has warned the Agency against." (Pl.'s Br. at 10.) In addition, Ewing claims that the ALJ violated SSR 96-8p "in failing to give controlling weight to Dr. Clyde's findings." (Pl.'s Br. at 10.) Specifically, Ewing states:

> Here, despite the ALJ's findings that Plaintiff has "relatively mild complaints of pain," the ALJ failed to note Plaintiff had been only partially ambulating in his 3D boots up until at least January 2012 when he was instructed to try to progress from his boots to normal tennis shoes at all times. (Tr. 306). Then it appears that he followed his physician's instructions and developed bilateral plantar fasciitis trying to walk more. (Tr. 298). Additionally, while the ALJ noted Plaintiff continued to experience bilateral foot pain, he failed to even address the treatment notes from July 2012, which indicated pain with range of motion of the bilateral subtalar joints as a result of bilateral subtalar joint osteoarthritis, which requires subtalar joint arthrodesis as soon as Plaintiff is able to quit smoking. (Tr. 17, 311). Therefore, even though the ALJ tried to find reasons in which to grant little evidentiary weight to Dr. Clyde's opinions, the substantial evidence of record supports those opinions, and the ALJ violated SSR 96-8p by not affording them controlling weight.
>
> Because the ALJ's RFC finding is not supported by either of the medical RFC assessments of record and conflicts with Plaintiff's treating physician's medical source statement, the ALJ committed reversible error by 'playing doctor' and dismissing the substantial evidence of record proves that his treating source's opinions should have been given controlling weight.

(Pl.'s Br. at 11.)

5

RFC is what an individual can still do despite her limitations.[2]  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do but the most.  *Id.*  The RFC is a function-by-function assessment, with both exertional and nonexertional[3] factors to be considered, and is based upon all of the relevant evidence in the case record.  *Id.* at *3–5.  The responsibility for determining a claimant's RFC lies with the ALJ.  *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence.  SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence.  The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe.  *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5.  The ALJ is permitted to draw reasonable inferences from the evidence in making

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."  SSR 96-8p, 1996 WL 374184, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities.  *Id.*  Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.  *Id.* at *6.

his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")

Furthermore, SSR 96-8p, which relates to assessing a claimant's RFC, states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . .
>
> . . . .
>
> . . . The RFC assessment must also consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996).

In addition, controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566;

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse*, 925 F.2d at 790.   Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance.   *See* 20 C.F.R. § 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In a Medical Source Statement dated June 11, 2012, John Clyde, M.D. ("Dr. Clyde"), noting that he had treated Ewing on four occasions beginning in October 2011, diagnosed Ewing with post-traumatic subtalar osteoarthritis and plantar fasciitis. (Tr. 307.)  Dr. Clyde reported that Ewing suffered from the symptoms of pain in bilateral heels and subtalar joints with walking and range of motion exercises and noted that Ewing suffered from pain to touch at interior heel, pain with motion of subtalar joints, swelling, and decreased range of motion. (Tr. 307.)  Dr. Clyde further opined that Ewing experienced daily pain due to walking, which ranged in severity depending on the amount of activity. (Tr. 307.)  Dr. Clyde further stated that Ewing's impairments had lasted or could be expected to last at least 12 months and that his experience of pain or other symptoms were severe enough to interfere often with his attention and concentration. (Tr. 308.)  In addition, Dr. Clyde noted that Ewing: (1) could walk one city block without rest; (2) could sit continuously for more than two hours and for a total of at least six hours in an eight-hour workday; (3) could stand continuously for thirty minutes and stand/walk for a total of less than two hours in an eight-hour workday; (4) could bend or twist 50% of the time during an eight hour workday;  (5) could occasionally lift and carry up to ten pounds; and (6) required a job that permitted shifting at will from sitting, standing, or walking. (Tr. 308-09.) Dr. Clyde further opined that Ewing would have difficulty working at a regular full time job on a sustained basis. (Tr. 310.)

In a Physical Residual Functional Capacity Assessment ("PRFCA") dated July 21, 2011, State Agency Medical Consultant Laurence Ligon, M.D. ("SAMC Ligon") opined that Ewing: (1) could lift and/or carry up to fifty pounds occasionally and up to twenty-five pounds frequently; (2) could stand and/or walk about six hours in an eight-hour workday; (3) could sit for a total of about six hours in an eight-hour workday; and (4) had the unlimited ability to push and/or pull (other than as shown for lifting and/or carrying). (Tr. 272.) In addition, SAMC Ligon indicated that Ewing could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. (Tr. 273.) SAMC Ligon also stated that his RFC determination was projected to be effective to one year from the alleged onset date because Ewing's "condition is expected to resolve to normal RFC capacity within a year." (Tr. 278.) In a Case Assessment Form dated November 17, 2011, SAMC Frederick Cremona, M.D. ("SAMC Cremona") affirmed SAMC Ligon's PRFCA (Tr. 294).

In this case, as noted above, the ALJ found that Ewing had the physical RFC to perform light work,[4] except that he was limited to standing and walking for two hours, has to frequently alternate sitting and standing, and could not climb ladders, ropes, and scaffolds. (Tr. 13.) As to Dr. Clyde's June 2012 medical source statement, the ALJ stated:

> Ordinarily a treating physician's opinion regarding a claimant's disability is to be afforded great or controlling weight. In considering such opinions and determining the weight I should accord them, I am to consider the length, nature,

---

[4] Light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

and extent of the treatment relationship; the frequency of the examinations; the supportability by other evidence given by the medical source such as medical signs and laboratory findings; the extent of his explanation; and the consistency with the record as a whole. More weight is to be assigned to the opinions of a specialist. Further, an Administrative Law Judge may reject a treating source opinion after considering the foregoing factors if he finds there is good reason to do so.

I have carefully considered Dr. Clyde's opinion, an opinion that is not entirely inconsistent with the residual functional capacity above. However, I find that some of Dr. Clyde's proposed limitations are not supported by the objective medical evidence, as detailed above. Specifically, there is no objective evidence or subjective complaints to establish any significant difficulties regarding the claimant's ability to lift or carry objects. Likewise, I do not agree with Dr. Clyde that the claimant would be limited to less than 2 hours of standing and walking in an 8-hour day. Dr. Clyde primarily noted the claimant's pain as a basis for his limitations. However, as indicated above, in January 2012, the claimant indicated he was only experiencing low-grade pain upon ambulation that he characterized as tolerable. Additionally, the claimant stated at that time he was no longer taking medication to control his pain, which raises additional questions regarding the limitation nature of his alleged pain. Furthermore, in February 2012, the claimant only noted his pain was 4 out of 10 in severity, and by April 2012, the claimant estimated his pain severity was only at 2 out of 10 in severity. Given the claimant's relatively mild complaints of pain during his treatment with Dr. Clyde, I find good cause to doubt Dr. Clyde's opinion regarding the limitation to less than 2 hours of standing and walking and his conclusion the claimant would have difficulty working at a regular job on a sustained basis. Although I have given the claimant the benefit of all possible doubt and found he did have limitations that would result in the above residual functional capacity, any further limitations are simply not supported by the objective medical record. Accordingly, I have given Dr. Clyde's opinion little weight insofar as it is inconsistent with the above residual functional capacity.

(Tr. 17 (internal citations omitted).)

As to SAMC Ligon's PRFCA which was affirmed by SAMC Cremona, the ALJ stated:

In accordance with SSR 96-6p, I have considered the administrative findings of fact made by the State Agency medical consultants. These opinions are weighed as statements from non-examining sources. However, I find the claimant is more limited than as previously found by the State Agency medical consultants. While the evidence does not entirely support the claimant's extensive complaints, some limitations could reasonably be expected as a result of his impairments. In reaching this decision, I noted the claimant's subjective complaints at hearing, the objective findings upon examination, and the longitudinal history of treatment for his conditions. However, I do not find that,

even when giving the claimant the full benefits of doubt regarding his subjective impairments, these impairments would limit the claimant further. Accordingly, the State Agency opinions are granted little evidentiary weight in determining the claimant's functional abilities.

(Tr. 18 (internal citations omitted).)

In addition, the ALJ, in making his physical RFC determination, reviewed, *inter alia*, the following evidence in the record: (1) a May 11, 2010 visit to the Emergency Room in which Ewing subsequently underwent "bilateral repair of the peroneal tendons with substalar incision and intramedullary screws" and was discharged on May 20, 2011 (Tr. 14; *see* Tr. 202, 210); (2) a June 6, 2011 follow-up visit in which Donald Stewart, M.D. ("Dr. Stewart"), noted that Ewing was "doing well at that time" and x-rays revealed stable changes in the right foot and the possibility of some rotation of the posterior facet in the left foot (Tr. 15; *see* Tr. 260); (3) a June 20, 2011 examination in which Dr. Stewart noted that Ewing was doing well with no complaints, Ewing's incision had healed nicely, and Ewing was given non-walking casts below the knees (Tr. 15; *see* Tr. 256); (4) a July 10, 2011 examination in which Dr. Stewart noted: (a) the bilateral calcaneus fractures were doing well; (b) Ewing's casts were removed; (c) Ewing denied any pain upon palpation even though there was some swelling around both limbs, (d) Ewing was to "start weight bearing" at this time, and (e) x-rays of the bilateral feet demonstrated healing fractures and acceptable extra-articular alignment, although the right foot had some slight incongruity of the inter-articular surface (Tr. 15; *see* Tr. 255); (5) an August 2011 visit to the John Peter Smith ("JPS") Clinic in which Ewing rated his pain at a 4 out of 10 in severity and bilateral x-rays of Ewing's feet indicated degenerative arthritic changes of both the right and left "great toes" and evidence of osteopenia, large Achilles and plantar calcaneal spurs, and diffuse soft tissue swelling. (Tr. 15; *see* Tr. 282, 287); (6) an October 31, 2011 visit to the JPS Clinic in which Ewing rated his pain as a 2 out of 10 in severity and the attending staff noted that Ewing:

(a) had not attempted any weight bearing outside of his boots, (b) had decreased range of motion of the subtalar joint in the bilateral feet, (c) had bilateral tenderness to palpation within the sinus tarsi and bilateral feet, (d) had no gross musculoskeletal abnormalities, (e) had grossly intact sensation to his bilateral feet, and (f) should begin weight bearing in his boots (Tr. 15; *see* Tr. 291-92); (7) a January 2012 visit to the JPS Clinic in which the attending staff noted: (a) Ewing was "partially ambulating in boot walkers and then trying to progress to tennis shoes," (b) Ewing stated that he had some low-grade but tolerable pain and swelling in his feet when he did use his tennis shoes, (c) Ewing stated he was no longer taking any pain medication, (d) Ewing was able to "perform about 20 to 30 degrees of inversion of the subtalar joint on both sides with no clicking, grinding, or popping, and (e) x-rays of the feet demonstrated "more joint space narrowing of the subtalar joint and some subchondral sclerosis at the posterior facet on the left" (Tr. 15; *see* Tr. 306); (8) a February 2012 examination at the JPS Clinic in which Ewing was able to ambulate, rated his pain at 4 out of 10 in severity, was assessed with bilateral plantar fasciitis, and given injections in the heels (Tr. 16; *see* Tr. 298-99); (9) an April 2012 examination at the JPS Clinic in which Ewing was able to ambulate and rated his pain at 2 out of 10 (Tr. 16; *see* Tr. 297); and (10) a July 2012 examination at the JPS clinic in which Ewing complained of pain and the attending staff noted that there was no edema but Ewing's range of motion in his right ankle was limited (Tr. 16; *see* Tr. 311).

Contrary to Ewing's claims, the ALJ did properly evaluate and discuss Dr. Clyde's June 2012 Medical Source Statement in accordance with SSR 96-8p. (Tr. 16–21.) The ALJ explained that he was not accepting Dr. Clyde's conclusions that were inconsistent with his RFC determination because he found that they were not supported by the objective medical evidence in the record. Specifically, the ALJ found that there was no objective evidence or subjective

complaints that supported Dr. Clyde's opinions in the Medical Source Statement regarding

Ewing's ability to lift or carry objects and limitations that Ewing could stand and walk less than

two hours in an eight-hour workday.  The ALJ noted other evidence in the record, as set forth

above, that indicated Ewing was only experiencing low-grade pain upon ambulation and was no

longer taking medication to control his pain.  In addition, the ALJ also specifically considered

SAMC Ligon's opinion in the PRFC and indicated that he was giving it little evidentiary weight

because he found the other evidence in the record indicated that Ewing was more limited than as

found by SAMC Ligon.   (Tr. 18.)

In summary, the ALJ did consider, evaluate, and analyze the treatment records and

opinions of Dr. Clyde as required by the statutes, regulations, and SSR 96-8p.  The ALJ properly

discussed the evidence in the record in making his disability determination, adequately explained

the reasoning for such determination and for giving less weight to certain evidence, and

exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate

limitations into his residual functional capacity assessment that were most supported by the

record.  *See,* e.g., *Muse,* 925 F.2d at 790 ("The ALJ as factfinder has the sole responsibility for

weighing the evidence and may choose whichever physician's diagnosis is most supported by the

record.").

As to Ewing's argument that, in essence, because the ALJ "rejected" the RFC opinions of

both Dr. Clyde and SAMC Ligon, his RFC determination was left unsupported by any

substantial medical opinion evidence, the Court notes that ALJs must avoid "'playing doctor'

and making their own independent medical assessments." *Frank v. Barnhart,* 326 F.3d 618, 622

(5th Cir. 2003 (quoting *Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990)).  "Usually the

ALJ should request a medical source statement describing the types of work that the applicant is

still capable of performing." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In *Ripley*, the Fifth Circuit found that remand for additional administrative proceedings was necessary where the "record includes a vast amount of medical evidence establishing that [the claimant] has a problem with his back" but "does not clearly establish . . . the effect claimant's condition had on his ability to work." *Id.*

In this case, contrary to Ewing's claims, the ALJ did not completely reject the RFC opinions of Dr. Clyde and SAMC Ligon. As to Dr. Clyde's RFC opinion, the ALJ noted that he was giving it "little weight insofar as it is inconsistent with" his RFC determination. (Tr. 17.) In addition, as to SAMC Ligon's RFC opinion, the ALJ stated he was granting it "little evidentiary weight." (Tr. 18.) Contrary to *Ripley*, this is not a case where there was no evidence establishing the effect Ewing's condition had on his ability to work. Instead, this is a case where two different doctors had very different opinions on the effects that Ewing's condition had on his ability to work. The ALJ, as required, clearly took both opinions into account, as well as the other evidence in the record, in determining Ewing's RFC. Because the ALJ's RFC determination is supported by substantial evidence, remand is not required.

## B. **Step Five and Vocational Expert Testimony**

Ewing also argues that the ALJ erred in relying on testimony from the VE to find at Step Five that Ewing retained the ability to perform other work that existed in significant numbers in the national economy. (Pl.'s Br. at 12-15.) Specifically, Ewing states:

> At the administrative hearing, the ALJ posed a hypothetical to the vocational expert to consider, which included an individual capable of performing light work but with the restriction of being able to only stand and/or walk for no more than two hours in an eight-hour workday. (Tr. 47.) To this, the vocational expert testified that the individual could perform a reduced number of jobs as a cashier II, hand packager, and machine tender, all of which are light, unskilled jobs. (Tr. 47). Additionally, the vocational expert testified that alternating between sitting and standing at will would not be permitted at these jobs but

14

frequent alternating would be tolerated. (Tr. 47). In his decision, the ALJ adopted this testimony, finding Plaintiff retains the ability to perform the light, unskilled jobs of cashier II, hand packager, and machine tender despite requiring the ability to frequently alternate between sitting and standing and can only stand and/or walk for a total of two hours in an eight-hour workday. (Tr. 13, 19). However, the ALJ erred in adopting the vocational expert's testimony, as it contradicts the regulations and SSRs 83-10 and 83-12.

. . . .

Further, as the jobs identified by the vocational expert are light, unskilled jobs not requiring the pushing and/or pulling of arm or leg controls, under the regulations' definition of "light work," these jobs could not be performed with the limitations set forth in the ALJ's RFC finding. *See* 20 CFR [§§] 404.1567, 416.967.

(Pl.'s Br. at 12-14.)

During the hearing before the ALJ, the VE testified as follows:

[ALJ:]     Would you please identify the jobs you found in the record?

[VE:]     Yes, sir. I believe all the jobs are going to be a drywall applicator, SVP six, and medium. One of the jobs had some—I believe it's probably a foreman or a lead worker, which would, in my opinion, maybe raise the SVP to seven, but all the physical requirements would remain the same.

[ALJ:]     All right. Now, if I asked you to consider a person of Mr. Ewing's age, education, and work history, would the ability to perform medium work, that is lifting no more than 25 pounds frequently, 50 pounds occasionally, but we would put a restriction on standing and walking to no more than two hours of an eight hour day, can sit up to six. Based on that, could such a person return to any past work?

[VE:]     No, sir. Not in my opinion.

[ALJ:]     Would there be any jobs?

[VE:]     Judge, I don't believe there would be any at medium.

[ALJ:]     Okay. What about the light level?

[VE:]     Judge, at light, in my opinion there would be a reduced number of cashier II jobs, Roman numeral II. This is SVP two, and light, 100,000 jobs in the U.S., and 8,000 in Texas, that's reduced due to the reduction in

15

standing and walking. Also, a hand packager, SVP two, and light, 40,000 U.S., and 8,000 Texas, also reduced due to the stand/walk limitation. Also, a machine tender, that's SVP two, and light, 20,000 U.S., 2,000 Texas, also reduced due to the stand/walk limitation.

[ALJ:]      Would your answer change if we added to that a need to alternate sitting and standing at will?

[VE:]      Judge, if we look at a strict definition of at will, I don't believe those jobs would be allowed. I believe these would allow frequent change of position between sitting and standing, but not pure at will.

[ALJ:]      So if the need was to alternate sitting and standing frequently, they could do that.

[VE:]      Judge, in my opinion, at those reduced numbers that I offered, yes.

[ALJ:]      Now, do these jobs involve any kind of climbing of ladders, ropes or scaffolding?

[VE:]      No, sir, and the DOT agrees, in my opinion.

(Tr. 46-48.)

As stated above, the ALJ found that Ewing had the RFC to perform light work except he is limited to standing and walking two hours, has to frequently alternate sitting and standing, and cannot climb ladders, ropes, or scaffolds. (Tr. 13.) Based upon this RFC determination and the testimony of the VE, the ALJ found at Step Four that Ewing could not perform his past relevant work. (Tr. 18.) At Step Five, the ALJ, also based upon the testimony of the VE, found that Ewing could perform the jobs of cashier II, hand packager, and machine tender that existed in significant numbers in the national economy. (Tr. 18.)

Contrary to Ewing's arguments in his brief, the ALJ's determination at Step Five did not contradict the regulations and SSRs 83-10 and 83-12. To begin with SSR 83-10 "addresses the capability to do other work under the medical-vocational guidelines, not when [, as here,] the ALJ relies upon vocational expert testimony." *Lincoln v. Astrue*, No. 10-1861, 2012 WL

16

300739, at *4 (W.D. La. Jan. 11, 2012); *see Muse v. Astrue*, No.10-1809, 2011 WL 7427187, at *8 (W.D. La. Dec. 21, 2011).   Furthermore, SSR 83-12 specifically states that the ALJ is required to consult a vocational source where, as here, an individual's RFC does not "coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967." SSR 83-12, 1983 WL 31253, at *2 (S.S.A. 1983).   In addition, although 20 C.F.R. §§ 404.1567, 416.967 set forth the definition of light work, an ALJ can obtain vocational expert evidence if, as in this case, a claimant's ability "to perform substantially all the requirements of light work was affected by additional limitations." *See Buckley v. Astrue*, No. 07-589-FJP-SCR, 2008 WL 4528179, at *2 n.9 (M.D. La. Sept. 30, 2008).

In this case, the ALR relied upon the VE testimony and not the medical-vocational guidelines to make his determination at Step Five.   The VE testified that someone with Ewing's age, education, training, and work experience, and RFC, which included a limitation to frequently alternate between sitting and standing, could perform the jobs of cashier II, hand packager, and machine tender.   (Tr. 47.)   "A vocational expert is called to testify because of his familiarity with job requirements and working conditions." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).   "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.*   To dispute a finding that he is capable of performing jobs a vocational expert has identified, Ewing must bring evidence contrary to the VE's testimony. *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005).   Because Ewing has failed to present such evidence, the ALJ's Step Five determination is supported by substantial evidence and remand is not required.



## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED<br>FINDINGS, CONCLUSIONS AND RECOMMENDATION<br>AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **May 13, 2014**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 29, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

19